## UNITED STATES

v.

**Sergeant Carolin V. MORSELL, FR 220–90–3250, United States Air Force.**

### ACM 28015.

U.S. Air Force Court of Military Review.

Sentence Adjudged 2 Dec. 1988.

Decided 26 April 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Major Ronald G. Morgan.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Colonel Robert E. Giovagnoni; Major Paul H. Blackwell, Jr. and Captain Morris D. Davis.

Before BLOMMERS, KASTL and MURDOCK, Appellate Military Judges.

### DECISION

KASTL, Senior Judge:

It is elementary catechism in military law that this Court will approve only so much of the findings and sentence as we find correct in fact and law under Article 66(c), UCMJ, 10 U.S.C. § 866(c). A trial forum's findings must be accorded great weight because of its advantage in seeing and hearing the witnesses. Nonetheless, we too must be convinced of an appellant's guilt beyond a reasonable doubt. Here, we are not. We will dismiss the Charge and specification and set aside the sentence.

Despite her pleas of not guilty, Sergeant Morsell was convicted of wrongful use of cocaine (a violation of Article 112a, UCMJ, 10 U.S.C. § 912a) before a general court-martial consisting of members. Her approved sentence is a bad conduct discharge, confinement for two months, and reduction to airman basic.

A lynchpin in the prosecution case at trial was the appellant's positive urinalysis

test after a random sweep in April 1988. That test showed a concentration of the cocaine metabolite benzoylecgonine of 183 nanograms per milliliter. The defense countered with evidence of Sergeant Morsell's good military character, her testimony that she had never used cocaine, and—most significantly—evidence that the urinalysis sample attributed to her may not have been hers. This last contention was supported, the defense claimed, by the results of a defense-requested blood grouping "secretor" test.

In preparation for this court-martial, the defense concluded that such a secretor test was indispensable. It was their theory that a forensic comparison between a Lewis secretor test and the urine specimen allegedly given by Sergeant Morsell in April 1988 would exonerate her. They requested the convening authority to approve employment of a private toxicology laboratory to perform secretor testing. The Government countered with an alternative plan—taking secretor samples at the Malcolm Grow Medical Center at Andrews Air Force Base, Maryland and testing elsewhere within the military forensic system. Specimens of blood, urine, and saliva were collected at Malcolm Grow in September 1988.

Before going to the hospital to provide these specimens, Sergeant Morsell received two letters from the assistant trial counsel. They were intended to expedite collection of the specimens. The assistant trial counsel then telephoned the officer in charge of the laboratory to advise him that Sergeant Morsell would be arriving to submit specimens for secretor studies. He passed on guidance as to the procedure which should be followed.

We believe an inadvertent error occurred in either the speaking of this guidance, its hearing, or "passing the word" among the laboratory staff. These technicians concluded that there was no requirement for the usual strict observation procedures. Malcolm Grow medical personnel did not directly observe the collection of the samples, positively identify the specimen donor, or ensure all positive controls over the spe-

cimens. The specimens were shipped to the crime lab at Fort Gillem, Georgia, where forensic secretor tests were performed by an Army chemist with expertise in the area. His task was to compare the "Malcolm Grow sample" to the sample which had been identified earlier as belonging to the appellant and containing the cocaine metabolite.

That chemist testified at trial for the defense. He related that, after comparing results of the two tests, in his judgment, either: (a) the April 1988 positive urine sample supposedly from Sergeant Morsell did not come from her body; or (b) that urine sample had so degraded that accurate results or comparisons between it and the September 1988 secretor test were impossible. The Army chemist also testified that deterioration of the April 1988 urine sample was unlikely.

At trial, the prosecution offered another theory—the urine test was fine but the secretion test was suspect because of flaws in its chain of custody. It was at this juncture that the defense learned for the first time that direct observation, required by Air Force Regulation 160–23, *Drug Abuse Testing Program,* para. 7 (31 July 1986), had not occurred as to the secretor test. The defense team claimed surprise by the Government's attack on the chain of custody. The defense was unsuccessful in winning a delay or temporary excusal of one of the defense counsel to conduct further discovery on the issue.

The members found the appellant guilty as charged.

As to the unfortunate breaches in the chain of custody and observation procedures, we find no evidence whatsoever of intentional misconduct by the prosecution team. In this, we are in full accord with the limited post-trial hearing findings of the military judge, commendably appointed by the convening authority under R.C.M. 1102(b)(2) to take evidence on the issue. In well-articulated findings, he found the prosecution had made (at worst) an honest mistake, in good faith. We concur.

During the post-trial hearing, the defense argued strongly that the Govern-

ment's misadventure amounted to an error of constitutional proportions.* We need not reach that contention. Instead, we decide the case under Article 66(c).

The Air Force urinalysis program must be responsive and responsible. Moreover, it is not enough that the military system be completely aboveboard—it must also convey to all the *appearance* of absolute and even-handed fair play. In regard to this appellant, we note that she has maintained her innocence throughout. The prosecution may have wounded its quarry but, in our estimation, it cannot bring her down with the evidence in its present posture. In short, the facts of this particular case about the secretor and urine tests create a reasonable doubt in our minds as to wheth-

er the appellant ingested cocaine during the period alleged.

The keystone of credibility for Air Force urinalysis efforts lies in rejecting urinalysis samples where procedures seem palpably flawed; we, too, will reject them.

The findings of guilty and the sentence are set aside and the charge is ordered dismissed.

Senior Judge BLOMMERS and Judge MURDOCK concur.

---

* The defense argument boils down to this: "We asked for a private test. We believe it would have exonerated us. You countered with a proposed Government test, which you then botched up. You thus took away our chance to prove our innocence by substituting a second-rate effort, one having a defective chain of custody. We have a Constitutional, due process right to an acquittal."